

**SIGNED this 16th day of June, 2025**

Nicholas W. Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| **Patricia Hagan Kimpson** | ) | **No. 1:23-bk-12773-NWW** |
| | ) | **Chapter 13** |
| **Debtor** | ) | |
| | ) | |
| **Patricia Hagan Kimspon** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Adv. No. 1:24-ap-01016-NWW** |
| | ) | |
| **Lakeview Loan Servicing, LLC** | ) | |
| **and Flagstar Bank, N.A.** | ) | |
| | ) | |
| **Defendants** | ) | |

**M E M O R A N D U M**

In the complaint initiating this adversary proceeding, the debtor plaintiff objects to the loan

servicer and the mortgage creditor defendants' Proof of Claim #8 in the amount of $110,458.74,

including a $35,829.73 arrearage, which plaintiff argues is the result of the defendants' wrongful acts. The alleged wrongful acts serve not only as the basis for plaintiff's objection to claim, but also for the following claims for relief: breach of contract, intentional and/or negligent misrepresentation, negligence, violations of the Truth in Lending Act ("TILA"), and violations of the Federal Debt Collections Practices Act ("FDCPA"). The defendants deny the allegations and contend the plaintiff's failure to timely complete loan modification documents resulted in the contested arrears and prevented the formation of a valid contract. Jurisdiction is proper in this court. 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(H).

Currently before the court is the motion for summary judgment filed by defendants' Flagstar Bank, N.A. (hereinafter, "Flagstar") and Lakeview Loan Servicing, LLC (hereinafter "Lakeview") and the plaintiff's response in opposition. Resolution of the summary judgment motion requires the court to answer the following questions:

1) Is there a genuine factual dispute concerning whether the parties entered into a loan modification agreement;

2) Is there a genuine factual dispute concerning whether the defendants intentionally or negligently made misrepresentations of fact; and

3) Whether the defendants, as a mortgage creditor assignee and servicer, respectively, are subject to the claims for negligence, violations of TILA, and violations of FDCPA.

Having considered the motions, supporting briefs, and statements of undisputed material facts and responses, the court will grant the defendants' motion in part as to the counts of intentional misrepresentation, negligence, and violations of the FDCPA. The court will deny defendants' motion

in part as to the breach of contract and negligent misrepresentation counts. For reasons outlined

below, the court will also dismiss the TILA claim.

## I.    Background

Plaintiff (hereinafter "Kimpson") purchased her Charleston, Tennessee home in October of

2011, before she was married. The thirty-year mortgage agreement was made between lender, Home

Savings of America, and Kimpson, who at the time, was legally, "Patricia Davis." Flagstar began

servicing the loan on July 3, 2018, and continues to service the loan today.  Kimpson was current

on her mortgage payments for nine years, but then lost her job in the wake of the COVID-19

pandemic in 2020. Like many homeowners during the pandemic, Kimpson applied for and received

a six-month forbearance, during which time her monthly payments of $499.29 were stayed but

continued to accrue. In March of 2021, Kimpson was granted another six-month forbearance

because she still had not found work. The mortgage was then assigned to Lakeview on September

8, 2021, and Kimpson applied in May of 2022 for a loan modification to subsume the mortgage

arrearage payments that had accrued while the loan was in forbearance.

Prior to the completion of that loan modification application, Kimpson received eight letters

from Flagstar. Half of the letters merely stated the application was incomplete, while the other half

listed the missing documents. The letter dated November 10, 2021, requests plaintiff to supply nine

documents (including 30-day pay stubs, a hardship letter, proof of other earned income,

unemployment income, etc.). The letter dated February 18, 2022, lists six missing items, including

a benefit award letter and bank statements (not previously requested). The letter dated July 14, 2022,

requests six items, including proof of name change, borrower assistance form, and letter of

explanation (not previously requested). The final two letters, dated September 8, 2022 and

December 16, 2022, list only two items needed, including a hardship letter and a proof of other earned income. The court does not know whether or not Kimpson provided all of the requested documents, but in any case, she received a loan modification approval letter on January 26, 2023.

The letter approved Kimpson for participation in a trial modification plan. The approval letter states that acceptance of the trial plan agreement occurs once the first trial payment is made, which Kimpson made in March of 2023. Paragraph 1 of the trial plan agreement outlines three trial payments of $1,045.24/each to be made on the first day of March, April, and May respectively. The agreement states, "After successful completion of the Trial Plan, you must continue to make payments in the amount of $1,045.24, due on the 1st of the month, until you receive confirmation that the loan is permanently modified." Paragraph 4 of the agreement lists the conditions to obtain a permanent loan modification as: (1) returning permanent loan modification documents on time, fully executed, and free of error(s); (2) providing a clear and marketable title, without encumbrances that prohibit a modification; (3) continuing to make timely payments at the Trial Plan payment amount until permanent modification; and (4) clearing any other required condition(s) precedent to closing the permanent modification." Paragraph 5 of the agreement states that if the terms of the trial plan are not met, it is considered broken and foreclosure proceedings may start or continue.

Kimpson made her three trial plan payments without incident. In June of 2023, however, her fourth trial payment was rejected and she was informed that her account was locked. Kimpson spoke with a Flagstar representative named "Naudia", who told her the company needed Kimpson to provide name change documentation. Naudia assured Kimpson she would not have to start the application process over, but could sign exact copies of previously submitted documents using her married name. Kimpson contends none of the letters she received during this time requested name

change information. Less than week later, Kimpson received a notice from Flagstar informing her that her modification application had been closed. The next day, on June 13, 2023, Kimpson received another letter from Flagstar indicating they were happy to comply with her request for a legal name change, though Kimpson states she did not request the name change. Meanwhile, in July and August, Kimpson attempted to make payments by phone but they were not accepted.

On August 7, 2023, Flagstar informed Kimpson that her name change information was complete. In September of 2023, Flagstar advised that a new loan modification application was needed because of Kimpson's delays and her failure to make trial payments for the three preceding months. Kimpson asked to speak with Naudia, but was instead referred to Darlene Hines, an early-stage delinquency foreclosure supervisor, whom Kimpson claims was never available.

On September 15, 2023, Kimpson received notice by mail that her application would not be evaluated because a foreclosure had been scheduled. Kimpson called Flagstar and was told she needed to submit her husband's check stubs and a hardship letter. Kimpson supplied these within three days. On September 26, 2023, Flagstar confirmed receipt of the requested information and also requested a utility bill. The next day, Flagstar sent another notice requesting that Kimpson upload page 3 of her application again. Kimpson spoke with Flagstar representative, Cynthia, on October 6, 2023, who confirmed page 3 was received and requested her wage information, which Kimpson provided. On October 12, 2023, Kimpson received yet another notice of incomplete documentation and she again called Flagstar. Kimpson states the representative found the documents while they were on the phone and that Kimpson was told that everything was complete.

A week later, on October 17, 2023, Kimpson received notice once more that her loan modification application was incomplete. She again called Flagstar, but this time requested a

reinstatement amount. On October 23, 2023, Kimpson received a letter stating loss mitigation had been closed. On November 13, 2023, at 4:59pm, Kimpson received an email with the reinstatement amount (due that day). Kimpson states that with one minute left until the payoff deadline, she was unable to make the payment. Kimpson filed her chapter 13 petition on November 27, 2023, to stop foreclosure proceedings against her home.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *see also* FED. R. BANKR. P. 7056. When deciding a motion for summary judgment, the court construes all reasonable inferences in favor of the nonmoving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the disputed issue need not be "resolved conclusively in favor of the party asserting its existence," rather, only sufficient evidence "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249.

## III.    Legal Analysis

As an initial matter, the defendants contend that Kimpson's first count (objection to Claim No. 8 and a request to determine the validity and/or amount of the lien) is an improper request for an accounting. They assert that, rather than filing this request in the adversary under Fed. R. Bankr.

P. 7001(b), it should have been filed as an objection to claim pursuant to Fed. R. Bankr. P. 3007.

Kimpson counters by citing Rule 3007(b), allowing claim objections to be included in adversary

proceedings where the relief sought requires an adversary proceeding.

This court has noted that, "a complaint to determine the validity, priority, and extent of a

lien is a form of request for disallowance of a claim tantamount to the filing of an objection to the

claim, at least for the purposes of § 506(d)." *In re Elrod*, 42 B.R. 468, 472 n.4 (Bankr. E.D. Tenn.

1984). Additionally, "[i]f an objection to claim is joined with a demand for relief of the kind

specified in Rule 7001, it becomes an adversary proceeding." *In re Shumate*, 42 B.R. 462, 467

(Bankr. E.D. Tenn. 1984).

In this case, Kimpson objects to the validity of the secured claim, including the $35,829.73

arrearage amount. Objecting to the amount of a proof of claim does not require the commencement

of an adversary proceeding because it may be prosecuted as a contested matter by simply filing an

objection to the claim. However, with the other counts of her complaint, Kimpson also seeks to

recover money,  including compensatory damages, purportedly caused by the defendants. Any

monetary relief to which Kimpson may be entitled would, of course, serve to reduce or eliminate

the defendants' claim. Recovery of monetary damages may only be prosecuted through an adversary

proceeding. Fed. R. Bankr. P. 7001(a). Therefore, because Kimpson's objection to the amount of

the proof of claim includes a demand for a type of relief specified in Rule 7001 the objection to the

claim may be included in the adversary proceeding. See Fed. R. Bankr. P. 3007(b).  Accordingly,

summary judgement as to plaintiff's first count is denied. The court will address the remaining

causes of action in turn.

### (a) Breach of Contract

In Tennessee, an enforceable contract must contain an offer, acceptance, and consideration. *AngleFix Tech, LLC v. Wright Med. Tech*., 2016 U.S. Dist. LEXIS 157598, 2016 WL 6770671 (W.D. Tenn., November 15, 2016). In order to prevail on a breach of contract claim, Tennessee law requires a plaintiff to satisfy the following elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Davidson v. Arlington Cmty. Sch. Bd. of Educ*., 847 Fed. Appx. 304, 310 (6th Cir. 2021). Further, Tennessee courts permit a plaintiff to invoke the duty of good faith and fair dealing (to "'honor the contracting parties' reasonable expectations' and 'protect the rights of the parties to receive the benefits' they bargained for)." *Id.* The scope of the duty of good faith and fair dealing depends on the specific contract in each case. *Id*. However, this duty is inherent in the breach of contract claim and not an independent cause of action creating new contractual rights or obligations. *Id*.

In this case, Kimpson asserts that Flagstar and Lakeview breached the contract between the parties created by the loan documents, deed of trust, and loan modification agreements by commencing foreclosure proceedings after failing to complete her loan modification process. Flagstar and Lakeview admit that Kimpson was offered a trial loan modification, but they argue that the conditions precedent were never met and therefore a contract was not formed. As noted by Flagstar and Lakeview, Kimpson's brief does little to explain the formation of the contract or its breach. Kimpson's brief, does, however, incorporate her vast factual assertions.

Taking her assertions in the light most favorable to Kimpson, the court finds that there is a genuine issue of fact as to whether Kimpson completed the requirements of her trial plan such that

she should have been afforded a permanent loan modification instead of being referred to foreclosure. The trial plan agreement set forth four requirements in "getting to a permanent loan modification." These requirements were: (1) returning permanent loan modification documents on time, fully, executed, and free of error(s); (2) providing a clear and marketable title, without encumbrances that prohibit a modification; (3) continuing to make timely payments at the Trial Plan payment amount until permanent modification; and (4) clearing any other required condition(s) precedent to closing the permanent modification."

As to the first requirement, it is clear from the filings that it took Kimpson months to get Flagstar what it needed to process her modification. Flagstar and Lakeview argue the trial plan was broken when Kimpson failed to timely provide proof of her name change. If the story had ended at this juncture, then the court would have to agree. However, Flagstar continued to engage with Kimpson by requiring  new documents over the next four months (proof of name change, new application, husband's check stubs, hardship letter, Kimpson's income information, a newly executed page 3, and a utility bill), thereby arguably extending the term of the trial plan. In any case, Flagstar's actions did not reflect a broken agreement. In fact, according to Kimpson, she was told on October 12, 2023, that Flagstar had everything it needed. If true, this statement suggests that Kimpson satisfied all requirements entitling her to receive a permanent loan modification and that the defendants' commencement of foreclosure was contrary to the trial plan agreement.

The second requirement (clear title) does not apply to this proceeding. As for the third requirement (continuing to make trial plan payments) it is undisputed that Kimpson's first three trial payments were made and accepted. When Kimpson attempted to make the fourth payment in June of 2023, she was told her account was locked because her name had not been changed. Complying

with the third prong was therefore impossible because payments were refused.. The fourth requirement (fulfilling conditions precedent) is vague at best, and while Kimpson's assertions that the companies' requirements changed over time might not create a breach by itself, it does create a question rooted in good faith and fair dealing-- of whether a loan modification was truly attainable.

Because there is a genuine issue of material fact concerning whether the defendants' conduct amounted to a breach of contract, summary judgment as to the breach of contract claim is denied.

### (b) Intentional and/or Negligent Misrepresentation

In order to prove a claim based on fraudulent or intentional misrepresentation, a plaintiff must show that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). By contrast, to establish a claim for negligent misrepresentation, a plaintiff must show

> "(1) the defendant supplied information to the plaintiff;
> (2) the information was false;
> (3) the defendant did not exercise reasonable care in obtaining or communicating the information; and
> (4) the plaintiff justifiably relied on the information."

*Edwards v. Tenn. Valley Fed. Credit Union*, 2024 U.S. Dist. LEXIS 105317, *24-25, 2024 WL 2981180 (E.D. Tenn. June 13, 2024) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)).

Kimpson's brief makes a skeletal assertion that representations and statements made by her loan modification processors meet the six elements for intentional misrepresentation. Her brief

states, "[i]n simple terms, Ms. Kimpson has explicitly stated in her complaint and sworn to in her declaration that Defendant supplied false information that her loan modification was approved and then negligently failed to accept her payments after the three month trial period." Flagstar and Lakeview contend that Kimpson has not identified any specific misrepresentations and supplied no evidence that any representations made were false. However, paragraph 38 of Kimpson's sworn declaration states that the Flagstar representative she spoke with on the phone told her she had "just found all of them [her documents] and everything was complete." Within five days, Kimpson would learn that this was not true. Accepting Kimpson's assertion as true, this then begs the question of whether the misrepresentation was made intentionally or negligently.

As to the intentional misrepresentation claim, the most challenging hurdle for Kimpson is the "knowing" element–whether any statements made to Kimpson were known (or reasonably assured) to be false when made. The only fact pled which might address this element is Kimpson's assertion that the company was "dual-tracking" (allowing the modification process and the foreclosure process to proceed at the same time). Whether or not this occurred is disputed by the parties. Even if this were proven true at trial, it would not necessarily prove that any representations made to Kimpson were known to be false when made. Indeed, Kimpson's misrepresentation argument focuses on negligence. Without more, the court cannot identify anything in the record establishing a genuine issue of fact relating to whether the defendants made any intentional misrepresentations. Accordingly, the court will grant summary judgment and dismiss the intentional misrepresentation count of the complaint.

As for the negligent misrepresentation portion of the count, the court finds that there is a genuine issue of fact surrounding representations made to Kimpson about the status of her loan

modification and in particular, the October 12, 2023, representation in which Kimpson was told that everything was complete. If this representation was made to Kimpson, it was either false or the Defendants failed to then complete her loan modification. Accordingly, the court will deny summary judgment as to the negligent misrepresentation claim.

### (c) Negligence

Kimpson also asserts a claim for negligence. Under Tennessee law, the elements of negligence are: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause." *Id*. At *26. Kimpson alleges that Flagstar and Lakeview negligently:

> • "failed to timely review the Plaintiff's loss mitigation application, often causing application documents to expire."
> • "close[d] the Plaintiff's loss mitigation process on the first application due to expired documents, even though the documents had expired because of Flagstar's delay."
> • "failed to complete the Plaintiff's loss mitigation process within the required timeframe allowed by The Consumer Financial Protection Bureau (CFPB)."
> • "prolonged the trial period process for loan modification by requiring the Plaintiff to change her name from Davis (Plaintiff's maiden name) to her married name of Kimpson."
> • "deprived the Plaintiff of her rights under the loss mitigation program and forced her into a foreclosure after negligently delaying the reinstatement amount being provided to the foreclosure attorneys."

The defendants counter by stating they owed no such duty.

A duty exists where a defendant owes a plaintiff a legal obligation "to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Id*. (citing *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008)). "'Whether a duty of care exists is a question of law', *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005), while "breach and causation are questions of fact for the jury," *Eden W. ex rel. Evans v*. Tarr, 517 S.W.3d 691, 702

(Tenn. Ct. App. 2015)." *Id*. Because "Tennessee common law generally does not impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances" *Power & Tel. Supply Co.*, 447 F.3d at 932 (6th Cir. 2006) (citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn.1996)), the plaintiff bears the burden of pointing "to some special circumstance warranting imposition of a common law duty." *Id*. at *26-27 (citing *Harris v. Nationwide Mut. Fire Ins. Co.*, 367 F. Supp. 3d 768, 775 (M.D. Tenn. 2019)).

Kimpson has failed to point to special circumstances warranting the imposition of a common law duty of care beyond the duties specified in any contract between the parties. The duties owed to Kimpson are rooted in contract. She will have the opportunity to prove that the defendants violated those contractual duties at trial. Accordingly, the court hereby grants the defendant's motion for summary as to the common law negligence claim.

### (d) Violation of the Truth in Lending Act ("TILA")

Kimpson's brief concedes that Flagstar and Lakeview are entitled to dismissal of her TILA claim (15 U.S.C. § § 1061-1667f). Accordingly, the court will not reach the merits of the claim and will dismiss the TILA claim.

### (e) Violation of the Fair Debt Collections Practices Act

Kimpson's final count alleges that Flagstar and Lakeview violated 15 U.S.C §§ 1629(d), 1629(e)(2), 1692(f), 1692(f)(1), 1692(f)(6) of the FDCPA by way of false representations about the debt's status, wrongful foreclosure, and conduct to harass, oppress, or abuse a person in connection with the collection of a debt. The defendants argue that this count should be dismissed because neither are "debt collectors" subject to the FDCPA.

"The purpose of the Fair Debt Collection Practices Act ("FDCPA") is 'to eliminate abusive debt collection practices by debt collectors.'" *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 734,(6th Cir. 2007). A "debt collector" is primarily defined as one who attempts to collect debts due to "another." *Id. at 735* (citing *Stafford v. Cross Country Bank,* 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)) (considering it "well-settled" that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts"). *See also Gibson v. JP Morgan Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 119400, *31-32, 2020 WL 3839751 (N.D. Ohio July 8, 2020) ("The statute specifically excludes the creditor from the definition of debt collector.").

The primary definition of "debt collectors" in the FDCPA is subject to a number of exceptions. *See* 15 U.S.C. § 1692a(6). Section 1692a(6)(F)(iii) of the FDCPA is particularly relevant in this case because it excludes from the definition any person, including a loan servicer, attempting to collect "any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 1692a(6)(F)(iii). *Willison v. Nelnet, Inc.*, 850 Fed. Appx. 389, 391 (6th Cir. 2021).

The FDCPA also includes a limited-purpose definition of debt collector: "For the purpose of section 1692f(6) of this title, [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6). Should a mortgage servicer fall within the limited purpose definition of a debt collector, it would only be subject to the provisions of § 1692f(6) of the FDCPA. *See Hullett v. Plunkett Cooney P.C.*, 2020 U.S. Dist. LEXIS 81067, *7, 2020 WL 2176880 (W.D. Mich. March 16, 2020) (holding that a "defendant law firm fell within the FDCPA's limited-purpose definition when it initiated a

- 14 of 16 -

nonjudicial foreclosure in the manner 'required by state law.'") (citing *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 473 (2019)).

Kimpson argues that Flagstar is a debt collector by directing the court to the numerous letters she received from Flagstar, each of which contain a "Fair Debt Collection Practices" disclaimer stating "This letter is an attempt to collect a debt." Voluntary inclusion of disclosures that may be required of debt collectors under the FDCPA does not qualify the defendants as debt collectors or otherwise make them subject to the FDCPA. Lakeview is not a "debt collector" under the primary definition of that term because it is the creditor that holds the debt at issue. Because Flagstar began servicing the mortgage in July of 2018, at a time when the loan was not in default, it is excepted from debt collector status by § 1692a(6)(F)(iii) of the FDCPA. Finally Kimpson does not argue that the defendants are debt collectors under the limited-purpose definition. Certainly there is nothing in the record to suggest that the defendants' principal purpose is the enforcement of security interests. There being no genuine issue of fact respecting whether the defendants are debt collectors under the FDCPA, the court will grant summary judgment to Flagstar and Lakeview as to the FDCPA claim.

As a final matter, the defendants move the court to preclude Kimpson from seeking certain types of damages: actual damages, statutory damages, punitive damages, and attorneys' fees. Because the court is granting summary judgment as to the intentional tort claim, the negligence claim, and the FDCPA claim–and with the dismissal of the TILA claim, statutory and punitive damages are no longer available to the remaining causes of action.  The amount of compensatory damages, if any, will be determined following a trial on the merits.

## IV.    Conclusion

For the foregoing reasons, the court finds there are genuine issues of material fact such that Kimpson's claims of breach of contract and negligent misrepresentation should proceed to trial. The court also finds there is no genuine issue of material fact and that summary judgment should be granted to Flagstar and Lakeview as to the counts of intentional misrepresentation, negligence, and violation of the FDCPA. The court will dismiss the TILA count because Kimpson concedes it should be dismissed. By separate order, the court will grant in part and deny in part the defendants' motion for summary judgment, as well as dismiss the TILA cause of action.

# # #